# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| ERIC MITCHELL BLANTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV607-060 |
| | ) |
| ALVIE KIGHT, MIKE HARLIN, | ) |
| SHANNON HIGGS, JAIME | ) |
| VILLEGAS, and ROBERT WIGGS, | ) |
| | ) |
| Defendants. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff has filed a complaint pursuant to 42 U.S.C. § 1983. Doc. 1. On May 23, 2007, plaintiff was granted leave to proceed *in forma pauperis* on the condition that he return a Prisoner Trust Account Statement form and a Consent to Collection of Fees from Trust Account form within thirty days of the order. The Court informed plaintiff that his failure to return these forms would result in a recommendation that this case be dismissed. Plaintiff has returned the two forms; the case is therefore ready to proceed.

Congress enacted the Prison Litigation Reform Act of 1995 (PLRA),

Pub. L. No. 104-134, 110 Stat. 1321–71, to establish procedures to govern civil complaints filed in federal court by prisoners and other detainees. Among the PLRA's procedures is the requirement for this Court to conduct an early screening in all civil cases of any complaint in which a prisoner seeks redress from a government entity or official. See 28 U.S.C. § 1915A. The purpose of the early screening is to "identify cognizable claims" in the prisoner's complaint and to dismiss any claims that: (1) are frivolous; (2) are malicious; (3) fail to state a claim upon which relief can be granted; or (4) seek monetary relief from a defendant immune from such relief. Id. Similarly, 42 U.S.C. § 1997e(c)(2) allows the Court, under the same four standards for dismissal listed in § 1915A, to dismiss any prisoner suit brought "with respect to prison conditions." Therefore, the Court will examine plaintiff's complaint to determine whether he has stated a claim for relief under 42 U.S.C. § 1983.

I. **BACKGROUND**

Plaintiff, who is confined in the Coffee Correctional Facility in Nicholls, Georgia, seeks relief from five officials of the Toombs County

Sheriff's Department for various injuries. Doc. 1. He alleges that he was attacked, defended himself appropriately, and was then falsely accused of committing a crime. Id. He also claims that he was denied adequate medical treatment on several occasions. Id. Plaintiff appears to be asserting claims for (1) false arrest, (2) false imprisonment, (3) malicious prosecution, and (4) denial of necessary medical care.

Plaintiff presents the Court with thirteen requests for relief, but most of them are clearly improper.[1] Doc. 1. After eliminating the improper requests, plaintiff seeks: (1) a preliminary and permanent injunction to

---

[1] He first asks the Court to "assume jurisdiction and inquire a full and complete federal investigation of all facts plaintiff has declared in this claim." Doc. 1. This Court is not an investigative agency, and it is the plaintiff's duty to prosecute his case. Second, he asks the Court to administer a polygraph test to each party to support his claim. Id. He apparently asks that these polygraph tests be presently administered. This is not a proper a request for relief. Furthermore, the Court is not aware of any authority that would permit it to order all parties to submit to a polygraph test; accordingly this request is **DENIED**. Third, he seeks to have felony charges brought against any person who has made or will make a false statement. Id. United States Attorneys are responsible for prosecuting those who perjure themselves in a federal case. Fourth, he seeks protection from any retaliation for filing his claim. Id. Should someone threaten plaintiff regarding this claim, he is always free to amend his complaint to add such a claim, pursuant to Federal Rule of Civil Procedure 15. Fifth, he asks the Court to provide a CAT-scan to determine if he needs further medical treatment. Id. The Court is not equipped to determine what sort of medical treatment or testing is appropriate in plaintiff's case. Sixth, he asks for a jury trial on all issues triable by jury. Id. The Court notes that plaintiff has demanded a jury trial should this case reach the trial stage. Seventh, he asks the Court for permission to amend his claim. Plaintiff is advised that he is permitted to amend his claim pursuant to the Federal Rules of Civil Procedure. The Court will not grant plaintiff advance permission to amend his complaint.

prevent an alleged bad-faith prosecution, (2) nominal damages from each defendant jointly and severally, (3) compensatory damages from each defendant, (4) $125,000 in punitive damages from each defendant, and (5) whatever additional relief the Court deems just and proper. Id. He also asks the Court to appoint an attorney to represent him.[2]

### A. The Fracas on February 4, 2006

Plaintiff alleges that on the night of February 4, 2006, he was viciously assaulted at Jr.'s Sportsman Bar in Uvalda, Georgia. Id. About one-and-one-half hours before the attack, Angie Thornton, one of plaintiff's friends, promised to give him a ride home. Doc. 1 Ex. C2 at 4. Apparently

---

[2] The Court construes this as a motion to appoint counsel. The Court does not doubt that the appointment of an attorney would likely further the efficient and prompt disposition of this case. As a general rule, however, there is no entitlement to appointed counsel in a civil rights action brought pursuant to 42 U.S.C. § 1983. Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990); Wahl v. McIver, 773 F.2d 1169, 1172 (11th Cir. 1986); Hardwick v. Ault, 517 F.2d 295, 298 (5th Cir. 1979); see also Thomas v. Estelle, 603 F.2d 488, 489 (5th Cir. 1979). Court-appointed counsel in civil cases is warranted only in "exceptional cases." Steele v. Shah, 87 F.3d 1266, 1271 (11th Cir. 1996); Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993); Fowler, 899 F.2d at 1096. The "key is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." Kilgo, 983 F.2d at 193. Here, plaintiff has drafted a lucid and concise statement of his claim and has demonstrated far greater skills than the typical prisoner litigant. His motion for appointment of counsel if **DENIED**.

this agreement angered Bobby Kersey, Angie's boyfriend. Id. Plaintiff states, "[m]e and Bobby had words and almost got into an altercation but someone stopped us from fighting and they took me back inside the bar." Id. After a little while, Angie came into the bar and asked plaintiff if he was ready to leave. Id. She assured him that Bobby was gone. Id.

Once plaintiff stepped foot outside the bar, he claims that he was set upon by at least five people, including Bobby Kersey. Id. at 5; Doc. 1 Ex. C3 at 2. Robert Bryant allegedly struck him on the back of the head with a liquor bottle. Doc. 1 Ex. C2 at 4. The bottle broke on impact. Id. Bryant used the jagged edge of the bottle to stab plaintiff in the back. Id. at 5. Plaintiff, who claims that he acted entirely in self-defense, pulled out his pocket-knife and "poked" Bryant without stabbing him. Id. Bryant refused to break off his assault, so plaintiff "poked him a little harder." Id. After Bryant let go, plaintiff "spun around and cut Bobby Kersey on the leg." Id.

A few seconds after the initial confrontation concluded, the bar owner and several other people came outside to pacify the situation. Doc. 1 Ex. C2 at 2. "Jr." Denmark (the club's owner), his wife, and as many as eight others allegedly disarmed plaintiff and then beat him with night-

sticks. Doc. 1 Ex. C3 at 2. Plaintiff states that Denmark's wife repeatedly fired a taser at him during the beating. Id. Next, plaintiff was dragged into the parking lot and made to lie on his stomach; he claims that he was held there at gunpoint. Id. While lying helplessly on the ground, Denmark allegedly attempted to kill plaintiff by striking him on the temple with a "flap jack." Id. Denmark missed his temple, instead striking his left eye. Id.

### B. Arrest and Aftermath

Out of a group of heavily armed men and women, plaintiff—a now unarmed and severely injured man—was the only person arrested once the police arrived. Id. After being incarcerated, plaintiff alleges that he learned he was a victim of police corruption. Id. He claims that Denmark is related to Sheriff Alvie Kight and Deputy Mann, and Denmark's wife is the sister of the chief of police. Id. Plaintiff believes that he was singled out for arrest simply to protect his attackers from criminal prosecution. Id.

After the arrest, Sergeant Harlin of the Toombs County Sheriff's Department transported plaintiff to Meadows Regional Medical Center.

Id. Upon arrival, defendants Villegas and Harlin interrogated him and attempted to get him to sign a statement. Id. Apparently he did not sign the statement at that time. Plaintiff states that he went in and out of consciousness during his stay at the hospital. Id. After a few hours passed, Harlin transported plaintiff to jail. Id. He did so over protests of the Medical Center staff; they said that any movement could severely injure or even kill plaintiff. Id. Once at the police station, plaintiff continued to fade in and out of consciousness after being booked. Id. He states that he could not stand on his own; a jailer had to hold him up when he showered. Id.

After plaintiff was booked, defendant Villegas allegedly refused to permit him to take any medication until he signed an incriminating statement. Id. Plaintiff's mind was clouded by the recent events, but he signed the statement just to receive his medicine. Id. Later, when he received and read a copy of the statement, he began to remember the details of the events leading to his arrest. Id. He allegedly attempted to recant the statement, but the police would not allow him to do so. Id.

Plaintiff believes that this police conspiracy continued after commencement of his state criminal trial. Id. His public defender, Mark Beberman, refused to allow him to be present at any pre-trial proceedings. Id. Plaintiff believes that Beberman's actions indicate that he conspired "with the district attorney to cover up Jr. Denmark's unjustifiable assault." Id.

## II. ANALYSIS

### A. False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiff first claims that defendants Villegas and Harlin conspired to deprive him of his liberty. Id. He claims that they falsely accused him of committing a crime to protect the true culprits. Id. These allegations could be construed as claims for false arrest, false imprisonment, or malicious prosecution. The tort of malicious prosecution . . . remedies . . . [the] *wrongful institution* of legal process." Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007). The torts of false imprisonment and arrest remedy similar injuries. They arise, however, from "detention *without legal*

*process"* and they "end[] once the victim becomes held *pursuant to such process."* Id. at 1095. Plaintiff appears to claim that the defendants initially arrested plaintiff without legal process and then wrongfully instituted legal process against him. The Court, therefore, will analyze all three legal theories.

    i.    *False Arrest*

The Fourth Amendment prohibits "unreasonable . . . seizures," and thus a law enforcement officer who abuses his state authority by conducting a warrantless arrest without probable cause is subject to civil liability under 42 U.S.C. § 1983. See Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) ("A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis of a section 1983 claim."); Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990); Herren v. Bowyer, 850 F.2d 1543, 1547 (11th Cir. 1988) ("The law is 'clearly established' that an arrest without a warrant or probable cause to believe a crime has been committed violates the fourth amendment"); Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990) (violation of the Fourth Amendment right not to be arrested without probable cause gives rise to a claim for damages

under § 1983). A false arrest claim accrues immediately after the unlawful arrest or seizure, and such a wrongful detention or seizure is actionable under the Fourth Amendment regardless of the outcome of any subsequent criminal prosecution. Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 896 (7th Cir. 2001); Mortgomery v. DeSimone, 159 F.3d 120, 126 n.5 (2nd Cir. 1998), Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir. 1995); Marx, 905 F.2d at 1507; Parrish v. City of Opp, 898 F. Supp. 839, 843 (M.D. Ala. 1995). Therefore, plaintiff is entitled to proceed with his false arrest claim regardless of whether he was subsequently acquitted or convicted of any of the charges arising from his arrest by defendants.

If defendants Villegas and Harlin arrested plaintiff solely to protect people who were closely related to Sheriff Kight and other police officers around town, then they made the arrest without probable cause. If the arrest was without probable cause, then plaintiff should be permitted to proceed with his claim against Villegas and Harlin. Ortega, 85 F.3d at 1525.

    ii.    *False Imprisonment*

In order to establish a cognizable claim for false imprisonment under

§ 1983, plaintiff must show the elements of common law false imprisonment—(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm—and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment. Ortega, 85 F.3d at 1526; Kelley v. Ga. Dep't of Corr., 145 F. App'x 329, 330 (11th Cir. 2005) ("prisoners have a 'constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release,'" and noting that "a showing of deliberate indifference is required to establish a violation of substantive due process rights protected by the fourteenth amendment").

Plaintiff alleges that the police intended to and actually did confine him when they took him into custody. Doc 1. Plaintiff, however, might not have been aware of his confinement. He states that he went in and out of consciousness for quite some time after he was assaulted. Id. Assuming that he was aware of his confinement during his moments of wakefulness, he still has a cognizable claim. Finally, plaintiff appears to argue that he was seized in violation of his Fourth Amendment right to be free from

unreasonable search and seizures. He seems to believe that he was arrested without probable cause, demonstrating the required constitutional due process component required under Ortega, 85 F.3d at 1526. Accordingly, plaintiff has stated a cognizable § 1983 claim for false imprisonment against defendants Villegas and Harlin.

    iii.  *Malicious Prosecution*

False imprisonment ends once the victim becomes held pursuant to legal process. Wallace, 127 S. Ct. at 1096. "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution." Id. Though the Supreme Court has never explicitly recognized a § 1983 claim for malicious prosecution, id. at 1096 n.2, the Eleventh Circuit "has identified malicious prosecution as a violation of the fourth amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). The constitutional tort of malicious prosecution does not accrue until the underlying criminal prosecution is terminated in plaintiff's favor. Id. at 882. Plaintiff has not alleged that the criminal prosecution has terminated in his favor. He appears to be held as a pretrial detainee on charges still

pending in the state court. Accordingly, plaintiff's claims regarding the current prosecution of his criminal case should be dismissed.

### B. Plaintiff's Claims of Deliberate Indifference to His Serious Medical Needs.

Plaintiff also asserts that he was deprived of necessary medical care on two occasions.[3] First, he alleges that defendant Harlin moved plaintiff from the Meadows Regional Medical Center despite a warning that removing plaintiff's "IV" could cause a blood clot or brain tumor. Id. Second, he states that defendant Villegas refused to give him his prescribed medication until he signed a statement. Id.

---

[3] Plaintiff also presents a claim against defendant Shannon Higgs for denying him necessary medical care while he was held in the Charles Durst Detention Center in Lyons, Georgia. Doc. 1. This incident is entirely unrelated to the claim which makes up the majority of plaintiff's complaint. It springs from an entirely different factual scenario and is against an entirely different defendant. "A cause of action consists of a single core of operative facts which gives a plaintiff the right to seek redress for the wrong concerned." Tice v. American Airlines, Inc., 959 F. Supp. 928, 934 (N.D. Ill. 1997), rev'd on other grounds, 162 F.3d 966 (1998); 18 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2034 (2d ed. 1994). Accordingly, this claim should be addressed in a separate proceeding.
Furthermore, allowing plaintiff to bring unrelated claims in a single suit would undermine the objectives of the PLRA. Under the PLRA, each complaint requires a fee payment, and, "if a prisoner files more than three frivolous complaints," the PLRA presents a "bar against future litigation." Schipull v. Dretke, 2006 WL 2844192, at *1 (S.D. Tex. Sept. 29, 2006). Filing multiple claims in one complaint offers a way around both the fee payment and the three-strike bar. Plaintiff, therefore, may not "circumvent the PLRA's objectives of deterring frivolous prisoner complaints" by presenting this unrelated claim. Id. Accordingly, this claim should be **DISMISSED** without prejudice.

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment's proscription against cruel and unusual punishment prevents prison personnel from subjecting a *prison inmate* to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Defendant, however, appears to have been a *pre-trial detainee* at the time of the alleged incidents. Absent a "formal adjudication of guilt in accordance with due process of law," a state does not have the authority to impose punishment. Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977). Therefore, "[c]onditions of confinement imposed prior to conviction are limited . . . by the due process clause of the fourteenth amendment," instead of the Eighth Amendment. Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985) (citing Bell v. Wolfish, 441 U.S. 520 (1979)). "In regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." Hamm, 774 F.2d at 1574. In evaluating a pretrial detainee's conditions of confinement, "a court must decide whether the detention officials intentionally imposed the restriction

for a punitive purpose or whether it is reasonably incidental to a legitimate government objective."[4] Wilson v. Blankenship, 163 F.3d 1284, 1291-92 (11th Cir. 1998). "If a restriction is not reasonably related to a legitimate purpose . . . a court may infer that the purpose of the government action is punishment." Lynch v. Baxley, 744 F.2d 1452, 1463 (11th Cir. 1984).

Plaintiff alleges that defendant Harlin improperly moved him from the medical center after the February 4, 2006 attack. Doc. 1. According to plaintiff, Harlin was aware of the risk of death or serious injury if he were to move plaintiff. Id. A nurse told Harlin that if he took plaintiff off of the "IV" it could result in a blood clot, brain tumor, or brain swelling leading to death. Id. Defendant Villegas allegedly refused to provide plaintiff with medical care upon arrival at the jail until he signed an incriminating statement. Id. Villegas was clearly aware of plaintiff's medical condition if he withheld plaintiff's prescribed medication. Furthermore, plaintiff alleges that his condition was obvious; he faded in and out of consciousness and he could not stand on his own. Id. As plaintiff has alleged that both of

---

[4] It is unimportant that plaintiff was harmed by police officers rather than by prison officials. The Eleventh Circuit in Thomas v. Town of Davie, 847 F.2d 771 (11th Cir. 1988), indicated that the deliberate indifference of a police officer may give rise to a claim for denial of necessary medical care. Id. at 772-73.

these defendants knew of and disregarded an excessive risk to his health and safety, he has successfully stated a claim under Farmer v. Brennan, 511 U.S. 825, 837 (1994).

C. **Claims Regarding Alvie Kight and Robert Wiggs**

Plaintiff's suit against Alvie Kight and Mike Harlin appears to be based solely on their positions as the officials charged with overall supervision of the jail. Plaintiff has failed to offer any specific allegations as to how these defendants contributed to the claimed constitutional deprivations. Id. In fact, the only reference to Kight in the complaint is that he was related to one of plaintiff's assailants. Id. Plaintiff never alleges that Kight was in any way personally involved in depriving him of any constitutional rights. Id. Robert Wiggs is never once mentioned in the body of the complaint. Id.

Claims brought pursuant to § 1983 cannot be based upon theories of vicarious liability or respondeat superior. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, the plaintiff must demonstrate either that the individual defendant directly participated in the alleged constitutional deprivation or that there

is some other causal connection between the official's acts or omissions and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam). Such a causal connection may be established by showing that a supervisory official implemented or allowed to continue an official policy or an unofficially adopted policy or custom under which the violation occurred. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Fundiller v. Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985). Plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring). Plaintiff does not show any causal connection between his alleged constitutional deprivations and any policies, customs, or conduct of these defendants. Plaintiff's complaint against them is therefore meritless.

## III. CONCLUSION

For all of the above reasons, the complaint as to defendants Kight, Wiggs, and Higgs should be **DISMISSED**. Plaintiff's claim for malicious prosecution should likewise be **DISMISSED**. The Clerk is **DIRECTED** to forward a copy of plaintiff's complaint to the United States Marshal for service upon defendants Harlin and Villegas.

**SO REPORTED AND RECOMMENDED** this _13TH_ day of November 2007.

_/s/ G.R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA